# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR420-022-2 |
| | ) | |
| JAMALL BROWN, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Defendant Jamall Brown is charged with one count of conspiracy to manufacture, possess with intent to distribute, and to distribute a controlled substance (methamphetamine and eutylone), in violation of 21 U.S.C. § 846, one count of possession with intent to distribute a controlled substance (methamphetamine and eutylone), in violation of 21 U.S.C. § 841(a)(1), one count of possession of a firearm in furtherance of drug trafficking crime, in violation of 18 U.S.C. § 924(c), one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1), and two counts of use of a drug-involved premises, in violation of 21 U.S.C. § 856(a)(1). *See* doc. 53 (Superseding Indictment). He has moved to suppress evidence collected pursuant to a search of a residence, 631 Tatem Street, Savannah, Georgia, and statements he made after that

search. *See generally* doc. 188. The Government responded in opposition as part of an omnibus response to multiple pretrial motions. *See* doc. 198 at 11-17. The Court held a hearing on the motion On December 2, 2020 at which no witnesses testified but several exhibits were admitted without objection. *See* doc. 224 (Minute Entry). For the reasons explained below, that motion should be **DENIED**. Doc. 188.

Brown's motion explains that, although he did not reside at the Tatem St. address searched pursuant to the warrant, "he was a frequent overnight visitor and guest of his girlfriend," who was, presumably, the resident.[1] Doc. 188 at 2, n. 1. The warrant was executed on the morning of January 7, 2020 and officers recovered "a brown partially burned cigarette believed to contain marijuana; two cups containing a yellow powder residue believed to be MDMA; a black scale containing yellow powder residue; a Smith & Wesson .40 caliber handgun; a .40 caliber magazine; six boxes of an over the counter sleep aid; 2 boxes of Family Wellness brand stay awake tablets; 3 boxes of assorted food coloring and

---

[1] Despite the fact that Brown did not reside at the home searched, the Government conceded at the hearing that he had standing to challenge the search. Since Fourth Amendment "standing" is merely an aspect of substantive Fourth Amendment doctrine, and not jurisdictional, the Government's concession is sufficient. *See Byrd v. United States*, ___ U.S. ___, 138 S.Ct. 1518, 1530 (2018).

dyes; one Apple iPhone believed to belong to [Brown]; and one Apple iPhone believed to belong to [his girlfriend]." *Id.* at 3.

After the search warrant was executed, an officer advised Brown of his *Miranda* rights and Brown consented to speak to the agents without an attorney. Doc. 188 at 3. He acknowledged that the firearm was his and made several other incriminating statements. *Id.* at 3-4. He was then transported to another a residence on Eleanor Street, which had also been searched pursuant to a warrant. *Id.* at 4. Another agent advised Brown of his *Miranda* rights and Brown again agreed to speak with law enforcement. *Id.* "According to investigators, Defendant Brown made a series of incriminating statements[ ] regarding the activities taking place and . . . Eleanor Street and his knowledge and participation in the same." *Id.* (footnote omitted).

Brown challenges the admissibility of all the evidence collected, including the statements he made, on the ground that the search warrant procured for the Tatem St. address lacked probable cause. *See* doc. 188 at 10-11. Specifically, he contends that the warrant's reliance on "tipster" information is insufficient because it lacked the required indicia of veracity. *Id.* at 10. The remaining information in the search warrant

application, he contends, is either irrelevant to the alleged criminal activity or "merely unsupported conjecture and speculation, devoid of specific facts with which to support a valid warrant." *Id.* at 11.

The Government responds that the affidavit includes sufficient information to establish probable cause. It explains that the investigation leading to the warrant "began with the discovery of possible criminal activity . . . regarding the shipment of pill die casts commonly used by individuals who are involved in the manufacture and distribution of narcotic pills . . . ." Doc. 189 at 13. Specifically, the affidavit states that a package addressed to Jamall Brown at the Tatem St. address was seized. *See* doc. 188-2 at 9. The package was labeled "Drill Bit," but found to contain "pill die casts in the shape of a Minion from Disney movie [sic] 'Despicable Me[.]'" *Id.* Further investigation revealed that Brown had received three other similarly labeled packages in 2019. *Id.* A further three similar packages were sent to Tina Lipsey at the same address. *Id.* The affiant stated that "[b]ased on [his] knowledge[,] training[,] and experience," the die casts are "commonly utilized by individuals to manufacture and label counterfeit narcotic pills for resale and distribution." *Id.*

The affidavit also relates a "Crime-Stoppers tip," in which an unidentified individual provided "detailed information," "that indicated [defendant Brown and a codefendant] both were involved in the illegal manufacture and distribution of counterfeit controlled substances pills in Chatham County, Georgia." Doc. 188-2 at 9. This "detailed information" was not contained in the affidavit. Law enforcement confirmed that Brown was serving a state sentence for distribution of marijuana in Chatham County and that Brown's codefendant resided in Chatham County, Georgia.[2] *Id.*

In December 2019, surveillance on Tatem St. observed a car that law enforcement identified as registered to Brown's mother parked in the driveway. Doc. 188-2 at 10. Agents then observed that vehicle travel to an address on Eleanor St. in Savannah, where they had previously determined defendant Benton resided. *Id.* at 9, 11. The same surveillance revealed that Brown was driving the car. *Id.* at 11. After observing that Brown was driving, Savannah Police attempted to stop the vehicle based on an apparent window tint violation. *Id.* The vehicle

---

[2] At the hearing, defense counsel pointed out that the affidavit states that Brown's current address was in Richmond Hill, Georgia, which lies in Bryan County.

fled from police "driving erratically at a high rate of speed in a heavily populated area." *Id.* Although officers chased the fleeing vehicle, they "lost sight of [it] as it departed the area at a high rate of speed." *Id.*

Between December 2019 and January 2020[3] law enforcement surveilled Tatem St. The affidavit states that the surveillance "observed an unusually high amount of vehicle and foot traffic coming and going from the residence in short periods of time." Doc. 188-2 at 13. The affiant states that "based on [his] knowledge, training, and experience, this type of activity is consistent with narcotics distribution and this residence [*i.e.* the Tatem St. residence] appears to be a location for manufacture and distribution of illegal controlled substances." *Id.*

Finally, the affidavit states that officers conducted a "trash pull" on January 3, 2020 at the Tatem St. residence. Doc. 188-2 at 14. A similar "trash pull" was also conducted at the Eleanor St. residence. *Id.* The Tatem St. trash pull revealed a single "Jet-Asleep pill bottle" containing an undisclosed number of blue pills. *Id.* The Eleanor Street trash pull revealed "48 empty Stay-Awake caffeine pill bottles, 5 Jet Alert [c]affeine

---

[3] The affidavit states that the surveillance occurred "from December 12, 2019 to January 2, 2019." Doc. 188-2 at 13. The Court assumes that the latter is a typographical error.

pill bottles, and assorted food coloring dye . . . ." *Id.* The affidavit states that "the items found at both addresses were consistent with items used in the large-scale production and manufacturing of counterfeit narcotic pills for resale and distribution," and explains how caffeine pills and "[c]olor additives" are used in such operations. *Id.* at 14-15.

At the hearing, defense counsel argued that the information recited in the warrant application failed to establish probable cause to believe that evidence of criminal activity would be found at the Tatem St. address. He pointed out that much of the information related to the Eleanor St. address, but argued that the affidavit did not include sufficient information to connect the two addresses to the alleged "large-scale production and manufacturing of counterfeit narcotic pills." Doc. 188-2 at 15.

The Supreme Court has established that, in evaluating the sufficiency of an issuing magistrate's determination of probable cause, "the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983). In considering whether the affiant's proffer and issuing judge's acceptance of the existence of "probable cause"

for the authorizations are adequate, it is important to remember that the standard for review is "exceedingly deferential." *See United States v. Rangel*, 2018 WL 817845, at * 6 (S.D. Ga. Jan. 18, 2018). "A reviewing court's task is not to make a *de novo* finding of probable cause but rather to decide whether the issuing magistrate—whose assessment of the affidavit's factual presentation is entitled to 'great deference'—had a 'substantial basis' for finding probable cause." *Id.* (quoting *Gates*, 462 U.S. at 236, 238-39); *see also United States v. Leon*, 468 U.S. 897, 914 (1984) ("Reasonable minds frequently may differ on the question of whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." (citations omitted)). In even "'doubtful or marginal cases,'" the probable cause determination should be upheld. *Rangel*, 2018 WL 817845, at * 6 (quoting *United States v. Scott*, 555 F.2d 522, 527 (5th Cir. 1977)). Probable cause, itself, requires neither convincing proof nor *prima facie* showing of criminality; only a "substantial chance" of such activity is required. *See Gates*, 462 U.S. at 235.

Even if the determination of probable cause were demonstrably erroneous, however, the evidence collected would remain admissible. The Government contends that the evidence discovered is admissible, despite any infirmity in the warrant's probable-cause basis, pursuant to the "good faith" exception to the exclusionary rule. Doc. 198 at 16-17. The Supreme Court, in *United States v. Leon*, held that officers' objectively reasonable reliance on a warrant, even one which was subsequently determined to lack probable cause, removed any practical justification for applying the exclusionary rule. *See* 468 U.S. 897, 921 (1984) (excluding evidence because the executing officer reasonably relied on the issuing magistrate's probable cause determination, "cannot logically contribute to the deterrence of Fourth Amendment violations."). Given that exception, "searches conducted pursuant to warrants will rarely require suppression." *United States v. Taxacher*, 902 F.2d 867, 871 (11th Cir. 1990).

Despite the rarity of suppression of evidence collected pursuant to a warrant, the exclusionary rule continues to apply where the executing officer has "no reasonable grounds for believing that the warrant was properly issued." *Leon*, at 922-23. *Leon* identified four situations where

9

suppression would remain appropriate: (1) where the officer misled the issuing magistrate by intentionally or recklessly including false information in the affidavit, (2) "where the issuing magistrate wholly abandoned his judicial role" by failing to act neutrally, (3) where the "affidavit so lack[s] . . . indicia of probable cause as to render official belief in its existence entirely unreasonable," and (4) where the warrant issued is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid." *Id.* at 923. At the hearing, defense counsel conceded that the only possible basis to argue that *Leon* would not apply in this case is the third; that the affidavit was so lacking in indicia of probable cause that law enforcement's belief was entirely unreasonable.

The Court concludes that the affidavit does provide, at least, a "substantial basis" for a finding of probable cause. Although defendant's arguments concerning the limited information specific to Tatem St. are not without merit, his characterization of the affidavit as "comprised mostly of conclusory statements of the investigator," doc. 188 at 10, misses the mark. To be sure, several statements in the affidavit are bolstered by statements of the affiant's opinion, "based on [his] knowledge, training, and experience." *See* doc. 188-2 at 9, 13-14, 15.

However, "opinions and conclusions of an experienced agent regarding a set of facts are properly a factor in the probable cause equation for issuing a search warrant." *United States v. Robinson*, 62 F.3d 1325, 1331 n. 9 (11th Cir. 1995) (internal quotation marks and citations omitted); *United States v. Leach*, 498 F. App'x 915, 917 (11th Cir. 2012). Here, the affiant included a description of the extensive experience that supported his conclusions. *See* doc. 188-2 at 2-3. After all, "conduct innocent in the eyes of the untrained may carry entirely different 'messages' to the experienced or trained observer." *United States v. Villegas-Tello*, 319 F. App'x 871, 875 (11th Cir. 2009) (internal quotation marks and citation omitted).

Once the affiant's experienced observations are given sufficient credit, defendant's challenge to the anonymous tip weakens. Defendant is certainly correct that the value of the tip is *de minimis* given the lack of indicia of its reliability. *See* doc. 188 at 10. However, the Government is also correct to respond that the reliability of the tip must be considered in the totality of the circumstances. *See* doc. 198 at 15. Moreover, the Eleventh Circuit has explained that "while an informant's 'veracity,' 'reliability,' and 'basis of knowledge' are relevant factors in the probable

cause analysis, corroboration of the details of an informant's tip by independent police work is of significant value, particularly in the context of an anonymous informant." *United States v. Gonzalez*, 969 F.2d 999, 1003 (11th Cir. 1992). Officers in this case did not simply rely on the anonymous tip; they investigated and discovered additional evidence, albeit perhaps circumstantial, that supported the tipster's allegation that Brown was "involved in the illegal manufacture and distribution of counterfeit controlled substances pills." Doc. 188-2 at 9.

Accordingly, the Court finds that the issuing magistrate had, at least, a "substantial basis" for the probable cause finding. That conclusion, moreover, belies any contention that the warrant so lacked indicia of probable cause that a reasonable officer could not have relied upon it. As *Leon* recognized, "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination . . . ." *Leon*, 468 U.S. at 921. This case is not extraordinary. The determination that there was a "substantial basis" for the original probable cause finding, is, therefore, equally adequate to establish that the executing officer had a good faith belief in the warrant's validity. Accordingly, the good-faith exception precludes suppression. The good-

faith exception, therefore, provides an alternative basis to deny the motion.

Defendant's argument for suppressing statements he made after the warrants were executed is conditional, and largely perfunctory. He only states that he seeks suppression of the statements "made by the Defendant in the aftermath of said improper search [of Tatem St.] as 'fruit of the poisonous tree.'" Doc. 188 at 1. As the Court has explained above, the warrant was based on sufficient probable cause, and, even if it was not, officers had a good faith belief in its validity. Since that search was proper, there was simply no poison in the tree to taint its fruit. Accordingly, to the extent that Brown's motion seeks to suppress his statements, it should be denied.

Although the warrant application in this case may have lacked a "smoking gun," it certainly contained a "substantial basis" for the issuing magistrate's probable-cause finding. However, even if probable cause were lacking, it was not so lacking that a reasonable officer could not have relied upon it. The evidence collected pursuant to the search warrant for Tatem St., then, should not be suppressed. Moreover, since the warrant was not defective, defendant's conditional argument for

suppression of his statements is unavailing. Defendant's motion, therefore, should be **DENIED**. Doc. 188.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*,

648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 2nd day of April, 2021.

_____
Christopher L. Ray
United States Magistrate Judge
Southern District of Georgia